Joseph M. Chambers (00612)
HARRIS, PRESTON & CHAMBERS, LLP
31 Federal Avenue
Logan, UT 84321
T: (435) 752-3551
F: (435) 752-3556
jchambers@utahlawfirm.com
*Attorney for Maria Cooper*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| In Re:<br><br>MARIA JOY COOPER,<br>    Debtor. | Bankruptcy No. 20-27259<br>(Chapter 7)<br><br>Honorable Joel T. Marker |
| MARIA JOY COOPER,<br>    Plaintiff,<br><br>vs.<br><br>FEDLOAN SERVICING<br>UTAH HIGHER EDUCATION<br>ASSISTANCE AUTHORITY<br>US DEPARTMENT OF EDUCATION<br><br>    Defendant. | Adversary Proceeding No. __-_____<br><br><br>**FILED ELECTRONICALLY** |

**COMPLAINT**
**(Discharge Student Loans)**

Plaintiff Maria Joy Cooper files this Complaint against Defendants on personal knowledge as to Plaintiff's own acts and upon information and belief as to all other matters, as follows:

## PARTIES

**A.   Plaintiff**

1. Maria Joy Cooper is a citizen of the State of , residing in the District of Utah.

**B.   Defendants**

2. FedLoan Servicing is a student loan servicer for federal and private student loans operated by the Pennsylvania Higher Education Assistance Agency (PHEAA), headquartered in the State of Pennsylvania, and can be served at PO Box 60610, Harrisburg, PA 17106.

3. Utah Higher Education Assistance Authority ("UHEAA") is a Utah state government agency and a part of the Utah System of Higher Education under the authority of the Utah State Board of Regents. UHEAA administers loans originated infer the US Department of Education loan programs. UHEAA can be served at 60 South 400 West, Salt Lake City, UT 84101.

4. The US Department of Education is a department of the United States Government and can be served at 3130 Fairview Park Drive, Suite 800, Chesapeake VA 23323.

## JURISDICTION AND VENUE

5. This Adversary Proceeding is brought under Case Number 20-27259.

6. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b). This is a core proceeding under title 11 because it concerns a determination as to the dischargeability of a debt.

7. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 1601, 15 U.S.C. § 1692 and Federal Rules of Bankruptcy Procedure Rule 7001.

8. Venue is proper in the District of Utah pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.     Background of the Problem**

9.      The federal student loan program was originally designed in response to Sputnik. After the successful launch of the Soviet rocket, the U.S. government became worried that the Russians were outpacing Americans in science and math education. In order to make Americans more competitive in the space race, the government authorized the creation of the National Defense Education Act in 1958 and the Guaranteed Student Loan Program (now the Stafford Loan) in 1965.

10.     Even by the 1970s, few students needed loans to go to college. The average cost of tuition was only $2,587 and the average debt for a medical student was only $13,469. With Pell grants, scholarships, and summer jobs, even kids from lower-income backgrounds could often make it through college debt free. But largely in response to anecdotal evidence about a few dishonest lawyers filing for bankruptcy immediately after graduation, Congress made student loans presumptively non-dischargeable in bankruptcy for the first five years of repayment, unless excepting such discharge would impose an "undue hardship" on the debtor or her dependents. Although this rule was at odds with the fundamental purpose of the bankruptcy code, it was perhaps a reasonable exception as it only applied to the first five years of repayment.

11.     Congress did not define "undue hardship" in 1978 but instead left that determination to the courts.  Over the next thirty years, courts wrestled with meaning of "undue hardship," creating and discarding nearly a dozen test, working within and without the text of the statute, now commingling the court's equitable powers under section 105 with the court's mandate under section 523(a)(8), now refusing to do so. Over time, two tests have emerged triumphant from the cauldron of judicial lawmaking: the Brunner Test ("Brunner") and the Totality of the Circumstances Test ("TOC"). These two tests are supplemented with wide disagreement over whether courts are permitted to discharge one of several loans, a practice known as "partial discharge."

12.     After Brunner and TOC had codified the meaning of "undue hardship," Congress amended section 523(a)(8) in two chief ways: (1) abolishing the five year time frame and

making student loans non-dischargeable in perpetuity; and (2) adding subsection 523(a)(8)(B) which excepted from discharge qualified private student loans. The problem with these amendments is that the "undue hardship" standards were created when courts were only charged with determining whether repayment of federally insured loans with capped interest rates during the first five years would constitute an undue hardship. Both Brunner and the Totality of the Circumstances test are therefore incredibly harsh because courts knew that after five years, the debt could be discharged without any showing of additional financial strain whatsoever.

13. Although Brunner/TOC is binding precedent in this Circuit, Plaintiff humbly prays that this Court reconsider the applicability of that precedent given the changing legal landscape of section 523(a)(8) since the time Brunner/TOC was enacted.

### Plaintiff Files For Bankruptcy

14. Plaintiff borrowed from Defendants in order to attend college.

15. Owing to circumstances beyond her control, Plaintiff filed for bankruptcy in this Court on December 16, 2020. The primary reason for her filing her bankruptcy is a medical condition "*Hypoparathyroidism*" that leaves her unable to work. Prescription medication was available and she was making progress while on the medication, but the medication was withdrawn by the FDA and her condition is now life threatening.

16. Plaintiff's combined student debt is now in excess of $175,000. Plaintiff's current income is $0.00 per month.

17. Plaintiff's student loans servicing would cost her approximately $ $3,000 each month.

18. Plaintiff's student loan payments constitute more than Plaintiff's take home pay.

### CLAIMS FOR RELIEF

### Count One: Determination of Dischargeability

19. Plaintiff re-alleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

20. Plaintiff is entitled to discharge of her student loan debt, either in whole or in part, because repayment would constitute an "undue hardship" on her.

21. Plaintiff meets the standard for undue hardship as articulated in Brunner/Totality

of the Circumstances.

22. Accordingly, Plaintiff prays this Court discharge his/her private student debt in part or in total.

## JURY DEMAND

23. Pursuant to his/her rights under Rule 38 of the Federal Rules of Civil Procedure and Rule 9015 of the Federal Rules of Bankruptcy Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER

24. In light of the foregoing, Plaintiff requests that Defendants be summoned to appear and judgment be entered against Defendants for:

(1) declaratory and injunctive relief;

(2) determination of dischargeability;

(3) other such relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, April 19, 2021.

HARRIS, PRESTON & CHAMBERS, LLP

/s/ Jos. M. Chambers
Joseph M. Chambers
*Attorney for Maria Cooper*
